YASSOO ENTERPRISES, INC. D/B/A DIAMOND JIM'S v. NORTH CAROLINA JOINT UNDERWRITING ASSOCIATION

No. 8421SC486

(Filed 19 February 1985)

1. **Insurance § 136; Evidence § 29.2— intentional burning—records of burglar alarm service—admission harmless error**

    In an action arising from defendant insurer's refusal to pay damages resulting from a deliberately set fire in plaintiff's business premises, the court erred by admitting testimony that plaintiff's burglar alarm system had a "bad control" and that a service call was refused. The witness presenting the testimony was not the custodian of records and there was no showing of how the records were maintained or of who had access to the records. Subsequent testimony as to the identity of the employee whose service was refused, admitted without objection, did not waive the earlier objection because the witness was testifying on the basis of an improperly admitted document; however, the admission of the document and related testimony was harmless because the evidence was irrelevant and proved nothing.

2. **Insurance § 136; Evidence § 48.2— intentional burning—expert testimony as to forcible entry**

In an action arising from defendant insurer's refusal to pay damages resulting from a deliberately set fire on plaintiff's business premises, the court did not err by allowing a fire chief and an S.B.I. agent to testify that plaintiff's building was not forcibly entered. The fire chief's testimony was admitted after the court became acquainted with his experience and background, and the fact that the S.B.I. agent examined the door nearly a year after the fire and after the door had been painted and new locks installed went to its credibility, not its competence.

3. **Insurance § 136— intentional burning—evidence sufficient**

Plaintiff's motions for directed verdict and for judgment n.o.v. were properly denied where the evidence on the issue of intentional burning tended to show that the fire was intentionally set and had been started inside the building, that the building was locked when plaintiff's president left it, that he had the only key, that the doors had not been forced open, that there was evidence apparently meant to look like forced entry, that there were no signs of damage, vandalism, or larceny, that plaintiff's president was the sole owner, that plaintiff was experiencing financial difficulty, and that the fire insurance had been increased twice shortly before the fire.

4. **Insurance § 136— intentional burning—instructions on motive**

In an action against an insurer for failing to pay damages resulting from a deliberately set fire, the court did not err by refusing to instruct the jury that evidence of motive has no probative value unless there is other evidence directly linking plaintiff or an agent of plaintiff to the fire.

APPEAL by plaintiff from *Walker (Russell G., Jr.), Judge.* Judgment entered 19 October 1983 in Superior Court, FORSYTH County. Heard in the Court of Appeals 9 January 1985.

This is a civil action in which plaintiff seeks recovery on an insurance policy issued by defendant for damages resulting from a fire in business premises occupied by plaintiff.

James Warren was the president and sole shareholder of plaintiff Yassoo Enterprises, Inc. Plaintiff corporation owned and operated a private social club called "Diamond Jim's" which was located on leased premises in Winston-Salem. Prior to September 1980, plaintiff owned and operated a club in the same building called "The Power Company." During September 1980, the club was renovated and the name was changed to attract a different clientele.

At about 2:30 a.m. on 13 February 1981, the Winston-Salem Fire Department, returning from a fire call, discovered a fire at

Diamond Jim's. The fire had apparently been burning for one or two hours when discovered and had almost burned itself out. In the course of extinguishing the fire, firemen discovered a wrecking bar just outside an open rear door on the basement level of the club. Two empty five gallon gasoline cans were found inside the club. There were distinct pour patterns on the floor and stairs inside the club. Because of the materials involved and weather conditions, accidental or spontaneous combustion was eliminated as the cause of the fire.

At the time of the fire, an insurance policy issued by defendant to plaintiff on 20 October 1980 was in effect. It insured against all direct loss by fire. The initial coverage of $73,000 had been increased twice and, at the time of the fire, was $88,000.

Warren, who had left the club at about 11:45 p.m. the night before, was notified of the fire at 6:00 a.m., when he returned home after spending the night with one of the club's employees. He immediately notified the local agency for defendant. W. R. Cutler, defendant's adjuster, and Warren inspected the burned premises and prepared an inventory of damaged property. Warren provided information concerning the extent of plaintiff's loss, alleging it was in excess of the policy amount. Defendant refused to pay plaintiff's claim and plaintiff filed its complaint alleging a breach of the insurance contract.

In its answer, defendant denied liability for the loss and asserted several defenses on the basis that Warren or other agents of plaintiff had set or procured the setting of the fire and that plaintiff otherwise had failed to comply with the provisions of the policy.

From a judgment on a jury verdict for defendant denying plaintiff recovery, plaintiff appealed.

*Pfefferkorn, Cooley, Pishko and Elliot, by David C. Pishko, for plaintiff-appellant.*

*Yates, Fleishman, McLamb and Weyher, by Joseph W. Yates, III, and Barbara B. Weyher, for defendant-appellee.*

EAGLES, Judge.

I

[1]  Plaintiff contends that it was error for the trial court to admit certain documentary evidence and to allow testimony as to its contents. We agree. The document in question was a copy of the installation and service record of plaintiff's burglar alarm system. It indicates that the system was purchased on 13 September 1979. The record shows that the system had been serviced on 15 October 1980 and a "bad control" found, and that a service call to correct the problem was refused on 30 January 1981. The witness who testified with regard to the document was the custodian of business records, including service records, for Alarmaster, Inc. Those records included plaintiff's service record.

Alarmaster was a successor corporation to Sentinel-Guard, the company that had sold and installed plaintiff's burglar alarm. The witness was not employed as custodian of records for either company at the time the entries were made on plaintiff's service record. Though she indicated general familiarity with the records of Sentinel-Guard, she was not personally familiar with plaintiff's record. Further, there is no showing how the records of either company were maintained. Specifically, there is no indication who had access to the records of Sentinel-Guard, who would have made the entries indicating that service was refused or whether the record entry was made in the normal course of business at or near the time of the alleged refusal of service. The only indication that the record was made in the usual course of business is in defendant's counsel's question to the witness, which was immediately followed by plaintiff's objection to the ensuing testimony. The court overruled that objection and a later objection to the admission of the document. In our view, the foundation for the admission of this evidence was inadequate, failing to establish the usual indicia of reliability that should accompany admissible business records. *See Pinner v. Southern Bell*, 60 N.C. App. 257, 298 S.E. 2d 749, *rev. denied*, 308 N.C. 387, 302 S.E. 2d 253 (1983). *See generally*, Brandis, *N.C. Evidence*, Section 155 (1982 and Supp. 1983).

Defendant argues that, even if the document and related testimony were wrongly admitted, plaintiff's objections were

waived by his failure to object to the following question by defendant's counsel and the witness's response:

Q. Do you know who the individual was who attempted to repair the system on January 30, 1981 but whose service was refused?

A. Mr. Rundo.

We disagree. Objections to the earlier admission of evidence are waived only when evidence of the *same import* is later admitted without objection. *Harvel's, Inc. v. Eggleston*, 268 N.C. 388, 150 S.E. 2d 786 (1966). The question and response quoted above do not constitute evidence of the same import as that objected to and incorrectly admitted. Plaintiff's objection to the admission of the earlier evidence was not waived by his failure to object to this question. Further, since the witness by her own admission was testifying only on the basis of a document that was improperly in evidence, and since counsel's question was apparently drawn from that same evidence, plaintiff's opposition to this evidence was self-evident and did not require an additional objection. *Duke Power v. Winebarger*, 300 N.C. 57, 265 S.E. 2d 227 (1980).

Though it was error to admit the document and the related testimony, the error was harmless because the evidence is irrelevant and proves nothing. There is no evidence or suggestion in the record as to why service was refused. Contrary to the testimony of the witness, the service record does not show that James Warren refused the service, only that service was refused. Further, there is no evidence tending to show that the "bad control" rendered the burglar alarm inoperable. Indeed, the three months delay between the discovery of the bad control and the service call to repair it indicates that the faulty control did not affect the system's effectiveness. Further, plaintiff has not shown that the verdict of the jury was probably influenced by this error. *State v. Murvin*, 304 N.C. 523, 284 S.E. 2d 289 (1981); *Collins v. Lamb*, 215 N.C. 719, 2 S.E. 2d 863 (1939). Plaintiff has shown no prejudicial error and his contention is without merit.

II

[2] Plaintiff next contends that the testimony of two witnesses that the building was not forcibly entered should have been excluded because the witnesses were not qualified by the court as

experts in the field of determining whether entry was forced. We disagree. The witnesses in question were Chief O'Ferrell of the Statesville Fire Department and Eugene Bishop of the State Bureau of Investigation. Chief O'Ferrell was initially qualified only as an expert in arson investigation. Later, after becoming acquainted with his experience and background, the court allowed O'Ferrell to give his opinion, over plaintiff's objection, as to whether the door had been forcibly opened. Though not formally designated an expert, the court's ruling to that effect was implied by its action. *Apex Tire and Rubber Co. v. Merritt Tire Co.*, 270 N.C. 50, 153 S.E. 2d 737 (1967).

With regard to Agent Bishop, plaintiff contends that his testimony that the basement door to the club had not been forced open was meaningless because Bishop did not examine the door until nearly a year after the fire and after the door had been painted and new locks had been installed. Plaintiff argues therefore that the testimony should have been excluded. This argument is not persuasive. Plaintiff's objections to Bishop's testimony go to its credibility, not its competence. The evidence is relevant and admissible. Whether it proves anything is a question for the jury, not the judge. *In re Durham Annexation Ordinance*, 66 N.C. App. 472, 311 S.E. 2d 898, *rev. denied*, 310 N.C. 744, 315 S.E. 2d 701 (1984). *See generally*, Brandis, *supra*, Section 8 (1982 and Supp. 1984). Plaintiff's contentions are without merit.

III

[3] Plaintiff contends also that it was error for the trial court to deny its motions for directed verdict, made at the close of the evidence, and for judgment n.o.v. The basis for both motions and for plaintiff's argument on appeal is that defendant's evidence on the issue of intentional burning fails to establish a link between the fire and Warren or any other agent of plaintiff. We disagree.

In civil cases involving intentional burnings, this court has held on at least two occasions that a jury may properly infer from circumstantial evidence that a party caused or procured a fire.

Ordinarily, there is no direct evidence of the cause of a fire, and therefore, causation must be established by circumstantial evidence. . . . It is true that there must be a causal connection between the fire and its supposed origin,

but this may be shown by reasonable inference from the admitted or known facts. . . . The evidence must show that the more reasonable probability is that the fire was caused by the plaintiffs or an instrumentality solely within their control. [Citations omitted.]

*Fowler-Barham Ford, Inc. v. Lumbermen's Mutual,* 45 N.C. App. 625, 263 S.E. 2d 825, *rev. denied,* 300 N.C. 372, 267 S.E. 2d 675 (1980); *Freeman v. Saint Paul Fire and Marine Ins. Co.,* 72 N.C. App. 292, --- S.E. 2d --- (1985).

Plaintiff nevertheless contends that, because there was no evidence placing Warren or another agent at the fire scene when the fire started, the evidence falls short of the standards pronounced in *Fowler-Barham Ford, supra.* For this proposition, plaintiff relies on *State v. Tew,* 62 N.C. App. 190, 302 S.E. 2d 633, *rev. denied,* 309 N.C. 464, 307 S.E. 2d 370 (1983), a criminal case in which it was held that a criminal defendant may not be convicted of arson unless there was some evidence placing him near the scene at the time of the fire.

We note first that plaintiff's reliance on *State v. Tew* is misplaced because that case involves the more strict standards required to withstand a motion to dismiss criminal charges. However, in *Freeman v. Saint Paul, supra,* a case involving facts similar to those before us, the plaintiff contended that "North Carolina courts should require an insurer to show proof of opportunity to set the fire before relying on the defense of intentional burning." *Id.,* slip opinion p. 6. The *Freeman* court rejected that argument, finding "such a requirement to be too stringent." *Id.* Accordingly, we reject plaintiff's argument here.

It is well established that the purpose for a motion for a directed verdict is to test the legal sufficiency of the evidence to support a verdict for the plaintiff and to submit the contested issue to a jury. *E.g., Manganello v. Permastone,* 291 N.C. 666, 231 S.E. 2d 678, 90 A.L.R. 3d 525 (1977); *Wallace v. Evans,* 60 N.C. App. 145, 298 S.E. 2d 193 (1982). Where a motion for directed verdict is made at the close of the evidence, the court must consider the evidence in the light most favorable to the non-movant and give him the benefit of every reasonable inference. *E.g., Cook v. Export Leaf Tobacco Co.,* 50 N.C. App. 89, 272 S.E. 2d 883 (1980), *rev. denied,* 302 N.C. 396, 279 S.E. 2d 350 (1981). Any contradic-

tions, conflicts or inconsistencies in the evidence must be resolved in favor of the opposing party. *Hart v. Warren,* 46 N.C. App. 672, 266 S.E. 2d 53, *rev. denied,* 301 N.C. 89, --- S.E. 2d --- (1980). The court should deny the motion if there is more than a scintilla of evidence to support the plaintiff's *prima facie* case. *Wallace v. Evans, supra. See generally,* 11 N.C. Index 3d, *Rules of Civil Procedure,* Section 50 (1978).

A motion for judgment n.o.v. is essentially a renewal of a motion for directed verdict, *Harvey v. Norfolk Southern Ry.,* 60 N.C. App. 554, 299 S.E. 2d 664 (1983), and the same standards govern the trial court's consideration of it as for a directed verdict motion. *Dickinson v. Pake,* 284 N.C. 576, 201 S.E. 2d 897 (1974). Those standards are also clearly established in our law. *See Morrison v. Concord Kiwanis Club,* 52 N.C. App. 454, 279 S.E. 2d 96, *rev. denied,* 304 N.C. 196, 285 S.E. 2d 100 (1981).

Bearing these principles in mind, some of defendant's evidence on the issue of intentional burning tends to show: (1) that the fire was intentionally set and that it had been started from inside the building; (2) that the building was locked when Warren left it; (3) that Warren had the only key; (4) that the doors to the club had not been forced open; (5) that there was evidence apparently meant to look like entry had been forced; (6) that there were no signs of damage, vandalism or larceny; (7) that Warren was the sole owner; (8) that plaintiff was experiencing financial difficulty; and (9) that the fire insurance had been increased twice shortly before the fire. Plaintiff's evidence tends to show that Warren drove two female employees home after closing the club for the night and locking up at 11:45 p.m.; that he remained at the residence of one of the employees until after the fire had been extinguished and returned home at 6:00 a.m.

Although there is no direct evidence linking Warren or another agent of plaintiff with the fire, the circumstantial evidence is clearly sufficient to allow the case to be submitted to the jury and to support the verdict in defendant's favor. *Fowler-Barham Ford v. Ins. Co.; Freeman v. Saint Paul,* both *supra.* The court did not err in denying plaintiff's motions for directed verdict and for judgment n.o.v.; plaintiff's contentions are without merit.

**[4]** Plaintiff finally contends that the trial court should have given the jury the instructions requested by it: that evidence of motive has no probative value unless there is other evidence directly linking plaintiff or an agent of plaintiff to the fire. We disagree. Plaintiff's sole authority for this argument is *State v. Tew, supra,* which, as we pointed out above, does not govern this civil action. Moreover, we note that the instructions actually given by the trial court emphasize that the jury must resolve the question of whether plaintiff had participated in the burning, not just whether plaintiff had motive.

Plaintiff makes several other assignments of error, but has failed to bring them forward in an argument. Those assignments are abandoned. N.C. App. R. 28(b)(5). In the trial below, we find

No error.

Judges WEBB and COZORT concur.