For the reasons stated, we find no error in the trial.

No error.

Judges PARKER and ORR concur.

STATE OF NORTH CAROLINA v. HARVEY CLARK, JR., AND PAULINE CAMPBELL CRAIG

No. 8725SC1069

(Filed 21 June 1988)

**1. Criminal Law § 99.9— questioning of expert witness by court—no expression of opinion**

   The trial court's questioning of defendant's expert witness did not constitute an opinion on the credibility of the witness where the questions comprised a part of the court's ascertainment of the witness's qualifications as an expert and were designed to clarify testimony regarding the various locations of his training. N.C.G.S. § 15A-1222.

**2. Arson § 4.1— burning of building used for trade—sufficient evidence of male defendant's guilt**

   The State's evidence was sufficient for the jury to find that the male defendant unlawfully burned a building used for trade in violation of N.C.G.S. § 14-62 where it tended to show that a fire at a grocery store owned by defendant was deliberately set; defendant had been handling kerosene on the day of the fire and was the last person in the store before the fire; the fire was ignited by a petroleum product; defendant closed the store much earlier than usual on the day of the fire; unlike all other times defendant had closed the store, he failed to lock the front door which activated a burglar and fire alarm system; defendant hurriedly left the store after closing; and smoke was seen seeping out from under a soda machine just as the two defendants were leaving the store.

3. **Arson § 4.1— burning of building used for trade—proof of willfulness and wantonness**

   The State presented sufficient evidence that the burning of a grocery store was willful and wanton so as to support defendant's conviction of a violation of N.C.G.S. § 14-62 where it tended to show that a highly flammable and volatile substance such as kerosene was used and that the store was in close proximity to other buildings.

4. **Criminal Law § 34.1— burning of grocery store—burning of another store where defendants employed—evidence irrelevant**

   In a prosecution for unlawfully burning a grocery store, the trial court erred in permitting the State to elicit testimony on cross-examination of the female defendant that her employment at another grocery store owned by the male defendant had terminated when the store burned since the testimony was not admissible to show bias, was not admissible as evidence of other bad acts under N.C.G.S. § 8C-1, Rule 404(b) because there was no showing that defendants had any connection with the previous fire, and was irrelevant.

5. **Arson § 4.2— unlawful burning of grocery store—insufficient evidence of female defendant's guilt**

   The State's evidence was insufficient to support the female defendant's conviction of unlawfully burning a grocery store where it showed only that the two defendants had known each other for 29 years, the female defendant worked for the male defendant, and the female defendant was seen exiting the store with the male defendant just before the fire.

APPEAL by defendants from *Seay, Thomas W., Jr., Judge.* Judgment and commitment entered 12 June 1987 in CALDWELL County Superior Court. Heard in the Court of Appeals 5 April 1988.

Defendants were indicted each on one count of burning a building used for trade in violation of G.S. § 14-62. The cases against each defendant were joined and came on for trial before a jury at the 8 June 1987 criminal session of Caldwell County Superior Court.

The State's evidence tended to show that defendant Clark owned and operated the Foodland Grocery Store (Foodland) located on North Main Street in Lenoir, North Carolina. On Sunday, 9 January 1985, just after 10:00 p.m., a fire erupted at the Foodland Store. Shortly before the fire began, several witnesses observed defendants Clark and Craig (who was employed by Clark as a cashier) emerge from the store's front door and walk to their respective vehicles in the parking lot. Defendant Clark stopped at his truck, turned and said, "I forgot something . . ." then turned

back to his truck. Neither defendant reentered the store. As the defendants stood in the parking lot, witnesses observed smoke seeping out from under a soft drink machine located next to the store's front door.

Witness Earl Efler, a cab driver, testified that he was driving a fare in the general direction of the Foodland when he saw smoke over the store's roof. Through one of the store's windows, he saw a fire at the ceiling top. Efler also stated that he had observed a streak of fire travel down an inner wall and almost simultaneously a window exploded and store lights blew out. Immediately after the explosion, the building was engulfed in flames. Witness Joe Osborne, co-owner of Northside Barbecue located 150 feet from Foodland, testified that he had seen defendant Clark leave the store in his truck "in kind of a hurry." Shortly thereafter he saw flames leaping from the Foodland. Osborne witnessed the fire from a small luncheonette (Joe's Ice Cream & Sandwiches) adjacent to the store.

The testimonies of Captain Bill Murray, Assistant Chief Robert Coffey and Kenneth Shaw of the Lenoir Fire Department presented the following facts: The fire was accompanied by heavy black smoke and unusually intense heat indicative of the presence of flammable liquids; there existed three separate and distinct burned areas within the store, significant because of the intensity with which they burned; the intensity of the fire's heat caused the glass front door to explode; a thick coating of oil found throughout the store coupled with a petroleum odor suggested the burning of a petroleum product; although all other doors in the store had been locked, the front door had been left unlocked.

David Campbell, Special Agent with the SBI, was accepted as an expert witness. He testified that following a thorough investigation of the fire aftermath, he found strong indications that the fire was of an incendiary origin by use of a flammable accelerant.

James Beane, Assistant Manager for Foodland, testified that only he, Clark and Craig had keys to the store. Beane alternated with Clark in opening and closing the store. He stated that the store's burglar and fire alarm system was activated by turning the lock in the front door. The alarm was programmed to dial Beane's and Clark's respective home telephone numbers. Beane testified that he was home the night of the fire and did not re-

ceive an alarm call. He also stated that the front door had always been locked when he had opened the store in the mornings.

Both defendants testified on their own behalf as follows: On 9 January 1985, Clark and Craig were closing early due to the cold weather. Clark went to his storeroom to fill up a kerosene heater to prevent the store pipes from freezing. While filling the heaters with kerosene, he was startled by someone entering the storeroom which caused him to spill kerosene over the floor. He removed the kerosene with paper towels.

Both defendants testified that the glass front door had been locked when they closed that Sunday night. Clark testified that they had activated the alarm system.

The State elicited from defendant Craig the following information: She had known defendant Clark for 29 years and had worked for him previously at a furniture store and another Foodland. Over defendants' objection, Ms. Craig was required to explain that her employment at the other Foodland had terminated when the store had burned. There was no evidence connecting either defendant with the previous fire.

Defendants' expert witness, James H. Edwards, testified that the fire was caused by an electrical shortage.

The jury returned verdicts finding both defendants guilty as charged.

The trial court imposed a nine-year prison sentence as to defendant Clark and an 18-month sentence as to defendant Craig. From the judgments entered by the trial court, both defendants appeal.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Joan H. Byers and Assistant Attorney General Doris J. Holton, for the State.*

*Byrd, Byrd, Ervin, Whisnant, McMahon & Ervin, P.A., by Joe K. Byrd, Sr. and Sam J. Ervin, IV, for defendant-appellant Clark.*

*Joe K. Byrd, Jr. for defendant-appellant Craig.*

State v. Clark

WELLS, Judge.

### Defendant Clark's Appeal

[1]   In his first argument and by assignments of error 75-79, defendant contends that the trial court erred by questioning defendants' witness Edwards in a manner which suggested the court's opinion as to the witness' credibility. We disagree.

While receiving testimony on Edwards' training and experience in the area of fire investigation, the following exchange occurred:

COURT: Let me stop you there. I thought that I heard you say the Merchant Marines that you were in.

A: Yes, the United States Navy Merchant Marine operated . . . .

COURT: Is that not located in New York, Long Island and King Point, New York.

A: Yes, King Point, New York in 1945 they had two. One at Pass Christian, Mississippi and the other one in California and they were operated under the United States Naval Reserve and we were sworn Officers of the United States Naval Reserve.

COURT: You were in the United States Navy then?

A: We were, yes, in the Navy Reserve but on active duty.

COURT: This was in 1945 during the war?

A: Yes.

COURT: You were not in the Navy or were you in the Navy.

A: We were in the Navy, sworn in the Naval Reserve.

Defendant argues that the trial court's manner of questioning cast doubt on the reliability of Edwards' background and training thereby impeaching his credibility. He contends that such amounts to an expression of opinion in violation of G.S. § 15A-1222 entitled "Expression of opinion prohibited." However, it is

well-settled that a trial court may question a witness for the purpose of clarifying the witness' testimony. *State v. Whittington,* 318 N.C. 114, 347 S.E. 2d 403 (1986); *State v. Jackson,* 306 N.C. 642, 295 S.E. 2d 383 (1982). Whether a judge's question or comments before the jury has the probable effect of being prejudicial should be weighed against the evidence produced and the conduct of the entire trial. *State v. Brady,* 299 N.C. 547, 264 S.E. 2d 66 (1980).

The determination of a witness' qualification as an expert is a question of fact to be decided by the trial court. *State v. King,* 287 N.C. 645, 215 S.E. 2d 540, *death sentence vacated,* 428 U.S. 903, 96 S.Ct. 3208, 49 L.Ed. 2d 1209 (1976). Judge Seay's questioning related to Edwards' expertise and comprised a part of the trial court's ascertainment of his qualifications as an expert witness. Moreover, Edwards' testimony generated some confusion regarding the various locations of his training. The trial court's questions were fairly designed to clarify this testimony. *Whittington, supra; Jackson, supra; Brady, supra.* These assignments of error are overruled.

Claiming insufficiency of the evidence, defendant contends by his third argument that the trial court erred in denying defendant Clark's motions to dismiss and in allowing the case to go to the jury. Specifically, defendant argues that the State failed to make its case under G.S. § 14-62 entitled "Burning of churches and certain other buildings."

On a motion to dismiss made pursuant to G.S. § 15-173 and G.S. § 15A-1227, the trial court is required to determine whether, when viewed in the light most favorable to the State, there exists substantial evidence of each element of the offense charged and of the defendant's being the perpetrator of the crime. *State v. Earnhardt,* 307 N.C. 62, 296 S.E. 2d 649 (1982); *State v. Powell,* 299 N.C. 95, 261 S.E. 2d 114 (1980). When the State's case rests entirely upon circumstantial evidence, as it does here, the facts adduced must be so connected or related as to directly implicate the defendant and leave open no other reasonable hypothesis. *State v. Needham,* 235 N.C. 555, 70 S.E. 2d 505 (1952). "However, the rule for determining the sufficiency of the evidence is the same whether the evidence is completely circumstantial, completely direct or both." *State v. Wright,* 302 N.C. 122, 273 S.E. 2d 699

(1981). Our review of the evidence and all reasonable inferences there derived, in the light most favorable to the State, indicate that the State's evidence against defendant was sufficient to take the case to the jury.

G.S. § 14-62 requires a showing of four elements: "(1) the building was used for trade; (2) a fire occurred in it; (3) the fire was of incendiary origin; and (4) the defendant unlawfully and willfully started or [was] responsible for it." *State v. Tew*, 62 N.C. App. 190, 302 S.E. 2d 633, *rev. denied*, 309 N.C. 464, 307 S.E. 2d 370 (1983). Defendant primarily contends that the State failed to present substantial evidence that defendant actually perpetrated the crime and did so intentionally. We disagree.

[2]  Defendant first argues that the evidence was insufficient to convince the trier of fact beyond a reasonable doubt that Clark burned the store. The evidence viewed in the light most favorable to the State tended to show the following: Clark had been handling and had access to kerosene the day of the fire; the fire was believed to have been ignited by a petroleum product and he was one of the last persons in the store before the fire; he closed the store much earlier than usual; unlike all other times Clark had closed, he failed to lock the front door which activated the alarm system; he hurriedly left the store after closing; smoke was seen seeping out under the soda machine just as defendants were leaving; and the fire was deliberately set.

While the evidence is entirely circumstantial, we believe it to be sufficiently substantial to connect defendant with the burning of the store. *Accord, State v. Caron*, 288 N.C. 467, 219 S.E. 2d 68 (1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed. 2d 794 (1976). [Sufficient evidence where fire was of incendiary origin; defendant was in shop shortly before fire; 30 minutes later defendant was seen with ashes and soot on his face and clothes for which defendant had no explanation]; *State v. Sheetz*, 46 N.C. App. 641, 265 S.E. 2d 914 (1980). [Evidence sufficient where defendant florist was sole owner of shop burned and stood to collect insurance proceeds; the fire occurred within five minutes after defendant closed his shop; defendant exited out back door after allowing employee out front door; the fire was not caused by an electrical malfunction; there existed evidence that defendant was heavily in debt]. Accordingly, defendant's argument is overruled.

[3] Defendant next contends that under our Supreme Court's decision in *State v. Brackett*, 306 N.C. 138, 291 S.E. 2d 660 (1982), the State failed to adduce sufficient evidence of defendant's wantonness and willfulness as required by G.S. § 14-62. We are unpersuaded.

The *Brackett* court's definition of wanton and willful provides that for a burning of a dwelling to be criminal the burning must have been done intentionally, ". . . without legal excuse or justification, and with the knowledge that the act will endanger the rights or safety of others or with reasonable grounds to believe that the rights or safety of others may be endangered."

In *Brackett*, the court held the evidence insufficient to show "wanton and willful" burning where the defendant's house was set back from other buildings; the defendant was home alone at the time of the fire and the defendant reported the fire herself.

In the case at bar, the use of a highly flammable and volatile substance such as kerosene coupled with the proximity of the other buildings (Joe's luncheonette) placed the interests and safety of others in jeopardy. That several witnesses testified to having been in the immediate area at the time of the fire confirms this point. We believe these facts meet the requirements of the *Brackett* test for "willful and wanton" under G.S. § 14-62 and hold that the State adduced sufficient evidence to make out its case against defendant.

[4] However, we agree with defendant's second argument that the trial court committed prejudicial error in allowing the State to elicit testimony from Ms. Craig regarding the previous Foodland fire. The State argues that the testimony relating to the prior fire was admissible to show bias; indeed, the trial court stated that the evidence was admissible for the purpose of showing bias. Because Craig's previous employment with Clark was terminated due to the other Foodland fire, the State argued that evidence thereof was admissible by way of illustrating the previous relationship between Clark and Craig thereby suggesting bias. We disagree.

The specific exchange of which defendant complains is as follows:

Q. Mrs. Craig, at the first Foodland Grocery where you worked for Mr. Harvey Clark in 1983, why was your employment terminated?

MR. ERVIN: Objection.

COURT: Overruled.

Q. You may answer?

COURT: Answer the question.

A. It burned.

MR. ERVIN: Request the instruction?

COURT: Denied.

MR. ERVIN: Move to strike the answer.

COURT: Denied.

MR. ERVIN: Request a limiting instruction?

COURT: Denied. Anything further for this witness.

Although evidence of a witness' bias has long been admissible, *see State v. Oliver*, 302 N.C. 28, 274 S.E. 2d 183 (1981); *State v. Turner*, 283 N.C. 53, 194 S.E. 2d 831 (1973) and the foregoing colloquy, by revealing their long-term relationship, may suggest bias as between the two defendants, to be admissible evidence must tend to prove or bear some logical relation to a fact in issue. N.C. Gen. Stat. § 8C-1, Rule 401 of the N.C. Rules of Evidence; *Brandis on North Carolina Evidence* §§ 77, 78 (1982). In the case before us, the "prior fire" testimony is completely irrelevant. It neither confirms nor suggests a relationship between Clark and Craig nor does it imply bias. The State's efforts to introduce the evidence served to prejudice the jury by connecting both defendants with a previous fire at their place of employment. As such, the admission of this evidence constituted prejudicial error.

We addressed a similar issue in *State v. Alley*, 54 N.C. App. 647, 284 S.E. 2d 215 (1981) where evidence of prior non-criminal, unrelated fires was held inadmissible because of its prejudicial character. Moreover, we pointed out that because the State had failed to show that defendant had had any connection with the previous fires, the exception for the admission of prior bad acts

set out by G.S. § 8C-1, Rule 404(b) was unavailable to the State. The same holds true in the present case and we accordingly award Clark a new trial.

### Defendant Craig's Appeal

[5] By her third assignment of error, Ms. Craig contends that the trial court's denial of her motion(s) to dismiss constituted error. We agree.

To prevail against a motion to dismiss, the State was required to produce substantial evidence of each element of the offense charged and to show that defendant was involved in the crime. *Earnhardt, supra; Powell, supra.* The evidence in this case taken in the light most favorable to the State fails to show that Ms. Craig either perpetrated or assisted in the perpetration of the Foodland fire. There was no indication that Ms. Craig had any opportunity or motive to burn the store. At most, the evidence shows that Ms. Craig was implicated by her mere presence at the scene. The "mere presence" of Ms. Craig at the scene of the fire, taken alone, is insufficient to incriminate her as an aider and abettor in a crime. *State v. Scott,* 289 N.C. 712, 224 S.E. 2d 185 (1976). There was no evidence that defendant Craig intended to aid defendant Clark in burning the store and/or that she communicated such an intent. *See State v. Rankin,* 284 N.C. 219, 200 S.E. 2d 182 (1973). That Craig and Clark had known each other for 29 years, that Craig worked for Clark and that she was seen with him exiting the store just before the fire was insufficient evidence to connect her with the perpetration of the fire.

As to defendant Clark,

New trial.

As to defendant Craig,

Judgment vacated.

Judges PARKER and ORR concur.